**Elizabeth H. Potter (OSB # 105482)**
epotter@advocateswest.org
**Laurence ("Laird") J. Lucas (ISB # 4733)** *Pro Hac Vice*
llucas@advocateswest.org
*Advocates for the West*
P.O. Box 1682
Bend, OR 97709
(503) 954-2721

**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PENDLETON DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N**, et al. | No. 2:24-cv-00145-HL |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS (ECF No. 10)** |
| v. | |
| **U.S. DEPARTMENT OF THE AIR FORCE**, | |
| Defendant. | |

**INTRODUCTION**

The Air Force's Rule 12(b)(1) motion mostly argues that Plaintiffs—a coalition of nonprofit conservation groups—have failed to adequately allege standing based on injuries to each organization under Article III, requiring dismissal of the Complaint. *See* Mot. (ECF No. 10) at 5–10. But the Court need not address these <u>organizational</u> standing arguments, since Plaintiffs have adequately alleged <u>representational</u> (or associational) standing, based on their members' extensive interests and uses of the Owyhee Canyonlands region where the Air Force is expanding its fighter jet training.[1]

Because NEPA is a procedural statute, to have Article III standing Plaintiffs need only demonstrate that the Air Force's alleged NEPA violations injure the interests of Plaintiffs' members who use and enjoy the Owyhee Canyonlands areas that are impacted by the expanded military training activities. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 484–485 (9th Cir.2011); *Cantrell v. City of Long Beach*, 241 F.3d 674, 679-90 (9th Cir. 2001).

The Air Force admits Plaintiffs have pleaded specific allegations of how the overflights "will adversely affect Plaintiffs' members by increasing noise levels and shocking sightings of planes racing over and through the canyonlands; harassing and displacing wildlife." Mot. at 10, n.2 (quoting complaint). This confirms that Plaintiffs' standing allegations are sufficient under Rule 12(b). Plaintiffs are not obligated to identify individual standing members in the complaint, as the Air Force wrongly contends. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (a plaintiff need only establish standing "with the manner and degree of evidence required at the successive stages of the litigation," and "on a motion to dismiss we presume that general

---

[1] The terms "representational" and "associational" standing are often referred to interchangeably. *See, e.g.*, *Pennell v. City of San Jose*, 485 U.S. 1, 7 n.3 (1988).

allegations embrace those specific facts that are necessary to support the claim") (cleaned up); *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1041 (9th Cir. 2015) (rejecting argument that individual members with standing must be identified in complaint).

Under the process outlined in *Lujan* and other Supreme Court cases discussed below, Plaintiffs will submit standing declarations at the summary judgment stage. Because the complaint more than adequately alleges Plaintiffs' representational standing, the Air Force's motion to dismiss should be denied.

## STATEMENT OF RELEVANT FACTS

Plaintiffs Oregon National Desert Association ("ONDA"), Friends of Nevada Wilderness, and Idaho Conservation League are nonprofit conservation groups based in Oregon, Nevada, and Idaho, respectively, that have been working for decades to protect, defend, and restore the Owyhee Canyonlands region of those three states—one of the nation's most remote, rugged and untrammeled landscapes, and a stronghold for imperiled species, including the greater sage-grouse and bighorn sheep. Complaint (ECF No. 1), ¶¶ 1, 13–20, 46–49.

That landscape and its national treasures will be harmed by the decision of Defendant U.S. Department of the Air Force ("Air Force") to dramatically expand and intensify military aircraft trainings over the Owyhee Canyonlands, as set forth in the July 2023 Record of Decision ("ROD") and March 2023 Environmental Impact Statement ("EIS") entitled "Airspace Optimization for Readiness, Mountain Home Air Force Base." *Id.* ¶¶ 1–8.

Under this "Owyhee Airspace Optimization" decision, F-15 fighter jets from the Mountain Home Air Force Base in Idaho may now conduct greatly expanded low altitude supersonic and subsonic fighter training exercises across some 7.5 million acres of the Owyhee

Canyonlands, including over Wilderness Areas, Wild and Scenic Rivers, and key wildlife habitats. *Id.* ¶¶ 1–8, 50–61.

The expansion of military training flights will be particularly intense over the Paradise North Military Operations Area ("MOA") in southeastern Oregon, and the Paradise South, Owyhee South, and Jarbidge South MOAs in northern Nevada, where the Air Force previously prohibited subsonic overflights below 3,000 feet above ground level ("AGL"), but now F-15 military fighter jets may fly down to just 100 feet AGL. *Id.* ¶¶ 50–60. For supersonic flights—those that create deafening "sonic booms"—the Air Force had prohibited such flights below 30,000 feet, but now allows them as low as 10,000 feet. *Id.* This is a massive change, allowing fighter jets to fly three times closer to the ground at supersonic speeds and an astounding 30 times closer to the ground at subsonic speeds. *Id.* And in Idaho, the Air Force maintained already-lowered airspace floors, yet ignored that changes in flight patterns and the overall increase in training activities would intensify negative impacts to designated Wilderness areas and important wildlife habitats in the agency's operations areas in the southwestern area of that state. *Id.* at ¶¶ 76, 85, 98, 106, 113.

Plaintiffs' complaint lays out in detail how the Air Force's EIS and ROD failed to adequately report and assess the impacts of the expanded overflights—particularly noise impacts, which will affect humans and an array of wildlife alike. *Id.* ¶¶ 66–131. And the complaint identifies numerous violations of the National Environmental Policy Act ("NEPA") that the Air Force has committed, including failure to adequately involve and inform the public; not evaluating an adequate range of alternatives; failing to document baseline noise conditions; downplaying and misrepresenting the true impacts that overflights will have on humans, wildlife, and wilderness values; and failing to require adequate mitigation measures. *Id.* ¶¶ 132–158.

The Air Force's treatment of greater sage-grouse is just one example of the many NEPA violations that Plaintiffs have alleged in detail. *See* Compl. ¶¶ 25–28. The Owyhee Canyonlands offer one of the last remaining strongholds for sage-grouse, which are imperiled by many threats—in particular, sage-grouse are documented to respond negatively to human-caused noises, even cars traveling nearby. *Id.* Sage-grouse are known to abandon breeding areas around leks due to anthropogenic noise, contributing to population-level declines. *Id.* The Bureau of Land Management ("BLM"), the federal agency charged with managing most of the public lands that underlie the Air Force's training area, adopted sage-grouse land use plan amendments in 2015 to protect sage-grouse and their habitats from adverse noise impacts. But rather than follow those plans, the Air Force relied on the more relaxed provisions of 2019 plan amendments adopted under the Trump administration—without ever acknowledging those 2019 plans are not in effect, because they were enjoined. *See id.*, *citing W. Watersheds Project v. Schneider*, 417 F. Supp. 3d 1319 (D. Idaho 2019) (enjoining 2019 plans); *see also ONDA v. Bushue*, 644 F. Supp. 3d 813, 825–27 (D. Or. 2022) (recognizing that 2019 sage-grouse plan rollbacks were enjoined in *Schneider* and thus the 2015 plans remain in effect). As a result, the Air Force failed to heed the best available science and land use plan directives in wrongly claiming that the fighter aircraft sonic booms and low-level overflights now being allowed across key sage-grouse habitats in the Owyhee Canyonlands will have no substantial adverse impacts. Compl. ¶¶ 97–109. This directly harmed Plaintiffs and their members' strong interest in the Air Force providing "the informed agency decision making and meaningful public participation required by [NEPA] and its implementing regulations." *See id*. ¶¶ 8, 156–157.

Another example is the Air Force's treatment of the impacts that its military training overflights pose for Wilderness Areas, Wild and Scenic Rivers, Lands with Wilderness

Characteristics, and other remote and wild features of the Owyhee Canyonlands. *See* Compl. ¶¶ 85–92. For wilderness-quality lands in Nevada and Oregon, the EIS acknowledged that the newly expanded overflights would increase noise levels substantially and "permanently alter the overall soundscape" there—yet the Air Force relied on a faulty legal reading of the Wilderness Act and brushed off the true scope of noise impacts to claim the intensified training operations will not impermissibly degrade the overall wilderness character of these areas. *Id.*

The complaint also alleges abundantly that Plaintiffs and their members are harmed by the Air Force's NEPA violations, sufficient for pleading Article III standing. *See* Compl. ¶¶ 1–8, 13–21, 62–65, 132–137. The complaint describes how ONDA, Friends of Nevada Wilderness, and Idaho Conservation League are each conservation membership groups that advocate for protecting and restoring the Owyhee Canyonlands, and have "many members who regularly enjoy and will continue to enjoy the public lands, waters, and resources that are adversely affected by the Air Force's Owyhee Airspace Optimization decision for educational, recreational, spiritual, and scientific activities." *Id.* ¶¶ 13–21. Their members' activities include "fishing, rafting, hiking, camping, hunting, bird watching, study, contemplation, photography, and other activities" in the area, as well as "monitoring ecological conditions and wilderness values on public lands affected by the Air Force's training activities in eastern Oregon, northern Nevada, and southern Idaho, including throughout the greater Owyhee region." *Id.* ¶¶ 17–20. Members of all three groups "actively participate[d]" "throughout the public [NEPA] process" that led to the challenged Air Force decision. *Id*. ¶ 17; *see also id*. ¶ 133 (describing that the Air Force also failed to provide adequate notice of its decision to Plaintiffs and their members).

The Owyhee Airspace Optimization decision will adversely affect Plaintiffs' members "by increasing noise levels and visual sightings of planes during their pursuits; will harass and

displace wildlife so that members will be less likely to observe wildlife; generate pollution that will impair waterways and wildlands and increase the wildfire risk; and threaten cultural resources and other resources." *Id.* ¶ 19.  And a slew of Air Force procedural errors undermined Plaintiffs' members' rights, under NEPA, to meaningful public participation in agency decision-making processes. *Id*. ¶¶ 138–158

As a result of these and other impacts, the "environmental, health, aesthetic, and recreational interests of Plaintiffs' members have been, are being, and will be adversely affected by the Air Force's training exercises and by Plaintiffs' members' reasonable concerns related to the effects of the newly intensified training regime." *Id.* ¶ 19.

## **ARGUMENT**

### I.     STANDARD OF REVIEW.

The Air Force's motion to dismiss for lack of Article III standing is reviewed under Rule 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). As the Air Force notes, its motion is a facial challenge—one that "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *See* Mot. at 5, citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing such a facial challenge, the Court must consider the complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Lujan*, 504 U.S. at 561; *Maya*, 658 F.3d at 1068.

### II.    PLAINTIFFS ADEQUATELY ALLEGE STANDING.

#### A.    The Court Need Not Address Organizational Standing Here.

As noted above, the Air Force devotes the bulk of its motion to challenging Plaintiffs' allegations of organizational standing. *See* Mot. at 7–11. The Air Force contends that Plaintiffs

failed to identify any specific injury-in-fact for each organization, such as by alleging "both a diversion of its resources and a frustration of its mission." *Id.* at 7–9, *quoting Fair Housing Council v. Roommate.com LLC*, 666 F.3d 1216 (9th Cir. 2012). Likewise, the Air Force argues that Plaintiffs have not pleaded with specificity how each organization's procedural interests have been harmed by the Air Force decision, arguing that "generalized harm to the forest or the environment will not alone support standing." *Id.* at 9–11, *quoting Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009).

Plaintiffs do not concede their allegations of organizational standing are inadequate to survive the Air Force's motion to dismiss under the liberal pleading standards of Rule 12. But there is no need to address this challenge, when Plaintiffs have adequately alleged all elements required for representational (or associational) standing, as discussed in the next section. *See Hunt v. Washington State Apple Adv. Comm.*, 432 U.S. 333, 343 (1977) (plaintiff need not prove organizational standing when it demonstrates representational standing on behalf of members). Because representational standing is enough to demonstrate Article III standing, the Air Force's attack on Plaintiffs' organizational standing is unnecessary and can be disregarded.

### B. Plaintiffs Have Adequately Alleged Article III Representational Standing Based on Injuries To Their Members' Interests.

In contrast to its much more extensive briefing on organizational standing, the Air Force's motion to dismiss barely challenges Plaintiffs' allegations of representational (or associational) standing—devoting just one page to complaining that Plaintiffs have supposedly failed their duty to identify specific individual members with standing in their complaint. *See* Mot. at 6–7. This argument can be readily rejected, because Plaintiffs are not obligated to identify specific members with standing in their complaint, and the allegations of the complaint are more than adequate to establish Article III representational standing at the Rule 12 stage.

Representational standing permits an organization to "sue to redress its members' injuries, even without a showing of injury to the association itself." *United Food and Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996). An organizational plaintiff has representational standing when its "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 181 (2000); *see also Summers*, 555 U.S. at 498 (explaining representational standing requires "at least one" member to have standing). Notably, the Air Force does not challenge the second or third elements of representational standing here, only the adequacy of the allegations about injury to individual members' interests. *See* Mot. at 6–7.

As to this first element, a member has standing to sue in their own right if they can show (1) they have suffered an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth*, 528 U.S. at 180–81. An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," and an injury is "concrete" if it is "real." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). An injury is actual or imminent if it is currently happening or is "certainly impending." *Lujan*, 504 U.S. at 564 n.2.

"In an environmental case, the 'relevant showing . . . is not injury to the environment but injury to the plaintiff." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832 (9th Cir. 2021) (citing *Friends of the Earth*, 528 U.S. at 181). A plaintiff can show injury "by showing a connection to the area of concern sufficient to make credible the contention that the

person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

As recounted above, the complaint addresses these requirements by alleging that Plaintiffs have many members who regularly visit and enjoy the wild places, rivers, and wildlife of the Owyhee Canyonlands in all three states where the expanded military training overflights will occur; that the overflights pose an array of direct and indirect adverse impacts to those lands, waters and wildlife, including from greatly increased noise associated with supersonic and low-level subsonic overflights; that those adverse impacts to lands, waters and wildlife will, in turn, harm Plaintiffs' members' use and enjoyment of the area; that the Air Force has violated NEPA in multiple ways by failing to fully disclose those impacts, consider reasonable alternatives, or adopt adequate mitigation; and that these injuries can be remedied by judicial relief, including reversing and remanding the EIS and ROD. *See* Complaint, pp. 1, 18–38, 66–71, 78–137.

These allegations are all that are required for standing in a NEPA case like this, as other courts have confirmed. *See Citizens for Better Forestry v. Dept. of Agriculture*, 341 F.3d 961, 970–72 (9th Cir. 2003) (plaintiffs had standing based on procedural injuries under NEPA, where they used affected areas); *Cantrell*, 241 F.3d at 679-90 (noting that "NEPA is a procedural statute," and holding that birdwatchers had standing based on NEPA "procedural injuries" to challenge EIS for failing to disclose impacts on birds at site they regularly viewed); *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1351-55 (9th Cir. 1994) (plaintiffs had standing to challenge regional herbicide spraying program under NEPA, where they showed regular use of the public lands to be sprayed); *see also WildEarth Guardians v. U.S. Dep't of*

RESPONSE TO MOTION TO DISMISS        9

*Agric.*, 795 F.3d 1148, 1155 (9th Cir. 2015) (finding that plaintiff may challenge an EIS that applied to multiple states based on a member's injury in just one of those states).

Indeed, as noted above, the Air Force itself concedes that the complaint alleges injuries to Plaintiffs' members from the noise and other impacts of the fighter overflights. *See* Mot. at 10, n.2. The Air Force quotes the complaint as including allegations that the overflights "will adversely affect Plaintiffs' members by increasing noise levels and shocking sightings of planes racing over and through the canyonlands; harassing and displacing wildlife so that members will be less likely to observe those sensitive desert species," and acknowledges that these "specific allegations" are "applicable to Plaintiffs' associational standing claim." *Id.* That concession is all the Court needs to deny the Air Force motion to dismiss.

In short, the Air Force's failure to disclose and take a hard look at impacts to the environment directly harmed Plaintiffs and their members' interests in "informed agency decision making" and "meaningful public participation"—the twin pillars of agency decision making under NEPA. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (describing that NEPA's dual purposes are to "ensure that agencies carefully consider information about significant environmental impacts" and to "guarantee relevant information is available to the public"); *see also ONDA v. v. Jewell*, 840 F.3d 562, 568–71 (9th Cir. 2016) (in absence of meaningful public participation during NEPA process, it is "not possible [for an agency] to begin to assess" impacts); *ONDA v. v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1121 n.24, 1122 (9th Cir. 2010) (agency's obligation to obtain and disclose environmental information during the public review process is central to NEPA's principle of "democratic decisionmaking").

### C. Plaintiffs Are Not Obligated To Name Individual Standing Members In The Complaint.

Despite this concession, the Air Force relies on *Summers* and *La Raza* to argue that Plaintiffs have to go beyond these allegations and identify in the complaint their specific members with standing and how their particularized interests are harmed. *See* Mot. at 6–7. That argument misreads both cases and the Federal Rules of Civil Procedure, and must be rejected.

Specifically, *Summers* addressed the adequacy of Article III standing at the <u>summary judgment</u> stage, and its directives about the specific facts needed to demonstrate member standing upon summary judgment do not apply at the Rule 12 stage here. The Supreme Court made that clear in *Lujan*, stating (again) that a plaintiff need only establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561. Thus, "general factual allegations of injury resulting from the defendant's conduct may suffice" for pleading purposes, because on a motion to dismiss the courts "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.,* quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

Indeed, the Ninth Circuit in *La Raza* rejected the very rule that the Air Force urges here that would require a plaintiff to always identify members by name in a complaint. *See La Raza*, 800 F.3d at 1041. The complaint there alleged that members of the plaintiff organization suffered injury from the defendant's conduct, but did not "specifically identify" the members. *Id.* The Ninth Circuit explained that a plaintiff does not need to identify members in the complaint to sufficiently plead standing "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Id.* That is precisely the case here, where Plaintiffs are long-

RESPONSE TO MOTION TO DISMISS 11

standing conservation organizations with large memberships that frequently use the Owyhee Canyonlands and are legitimately concerned about the noise and other impacts of the expanded fighter jet overflights. And the Air Force has made no showing why it needs to know the identities of Plaintiffs' members at such an early stage of this Administrative Procedure Act litigation, further foreclosing its reliance on *La Raza*.

Similarly inapt is the Air Force's citation to *California Ass'n for the Preservation of Gamefowl v. Stanislaus County*, No. 1:20-cv-01294-ADA-SAB, 2023 WL 1869010 (E.D. Cal. 2023), which noted that, in *La Raza,* "the Ninth Circuit rejected the notion that *Summers* stands for an absolute rule requiring an injured member of the organization to always be specifically identified to establish Article III standing for the organization." *Id.* at *16. Citing *Lujan*, the court further held that the "individuals' names add nothing to the standing analysis at this stage," and denied the Rule 12 motion. *Id.* at *19.

Many other Ninth Circuit cases have upheld similar pleadings as adequate to allege standing at the Rule 12 stage. *See, e.g., Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002) (finding short description of harm sufficient at pleading stage); *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1176–77 (9th Cir. 2000) (finding plaintiff sufficiently alleged standing at the motion to dismiss stage "by alleging that its members make use of the federal lands that are the subject of the [challenged action]"); *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1581–82 (9th Cir. 1993) (finding plaintiff sufficiently alleged standing in complaint where it said "the organizations [bringing suit] and their members derive scientific, recreational, and aesthetic benefit and enjoyment from the existence in the wild of the Mt. Graham Red Squirrel" and where they argued their "interests would be irreparably harmed if the squirrel were permitted to become extinct"); *see also Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867, 869–70 (9th Cir. 2002)

(finding sufficient general allegations in complaint, in part, because "[a]t this stage of the proceedings, we do not speculate as to the plausibility of th[e] allegation").

Plaintiffs and their undersigned counsel are well aware of their duty to provide specific member declarations to prove their Article III standing at the summary judgment stage, under the procedures approved by the Supreme Court in cases including *Lujan, Friends of the Earth*, and *Summers*. Indeed, they have done just that in many cases before this and other courts, including the ONDA cases cited above. *See, e.g., ONDA v. Jewell*, 840 F.3d at 575 (reversing BLM approval of right-of-way for industrial wind facility atop Steens Mountain in eastern Oregon for failing to assess sage-grouse winter habitats); *Kraayenbrink*, 632 F.3d 472, 484–485 (plaintiff declarations at summary judgment established standing to challenge BLM grazing regulation revisions); *see also Hausrath v. U.S. Air Force*, 491 F. Supp. 3d 770 (D. Idaho 2020) (holding Air Force violated NEPA in approving other military training flights out of Mountain Home Air Force Base).

The Court (and the Air Force) will thus have the opportunity to fully assess the adequacy of Plaintiffs' standing declarations when they are submitted at the summary judgment stage. The Air Force's misguided attempt to substitute summary judgment requirements in place of the liberal pleading standards under Rule 12 must be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Air Force's Motion to Dismiss.[2]

---

[2] If, however, the Court is inclined to agree with the Air Force's motion, the appropriate relief would be allowing Plaintiffs leave to amend their Complaint. *See La Raza*, 800 F.3d at 1041–42.

RESPONSE TO MOTION TO DISMISS 13

Dated this 2nd day of April, 2024.    Respectfully submitted,

*s/ Laurence ("Laird") J. Lucas*
Elizabeth H. Potter (OSB # 105482)
Laurence ("Laird") J. Lucas (ISB # 4733) *Pro Hac Vice*
Peter M. ("Mac") Lacy (OSB # 013223)

*Attorneys for Plaintiffs*