IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

OREGON NATURAL DESERT ASS'N,
FRIENDS OF NEVADA WILDERNESS, and
IDAHO CONSERVATION LEAGUE,

        Plaintiffs,

  v.

U.S. DEPARTMENT OF THE AIR FORCE,

        Defendant.

Case No. 2:24-cv-00145-HL

**FINDINGS AND RECOMMENDATION**

HALLMAN, United States Magistrate Judge:

Plaintiffs Oregon Natural Desert Association, Friends of Nevada Wilderness, and Idaho Conservation League bring these claims under the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act, challenging Defendant United States Department of the Air Force's decision to "dramatically expand and intensify military aircraft trainings over the Owyhee Canyonlands of Oregon, Idaho, and Nevada." Compl. ¶ 2, ECF No. 1. Before this Court is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. Def.'s Mot., ECF No. 10. This Court held oral argument on Defendant's motion on

PAGE 1 – FINDINGS AND RECOMMENDATION

July 10, 2024. ECF No. 16. Because Plaintiffs allege sufficient facts to demonstrate standing, Defendants' motion should be DENIED.

## BACKGROUND

Plaintiff Oregon Natural Desert Association (ONDA) is a public interest organization with around 18,000 members and supporters. Compl. ¶ 13. Their mission is "to protect, defend, and restore forever Oregon's high desert for present and future generations." Compl. ¶ 13. Plaintiff Friends of Nevada Wilderness is a public interest organization with around 16,000 members and supporters. Compl. ¶ 14. Their mission is "to preserv[e] all qualified Nevada public lands as wilderness, protect[] all present and potential wilderness from ongoing threats, educat[e] the public about the values of, and need for, wilderness, and improv[e] the management and restoration of these wild lands." Compl. ¶ 14. Plaintiff Idaho Conservation League is a conservation organization with more than 30,000 members and supporters. Compl. ¶ 15. Their mission includes "protecting public lands and the fish and wildlife they sustain from high-risk natural resource use projects." Compl. ¶ 15.

Defendant United States Department of the Air Force conducts military aircraft trainings over the Owyhee Canyonlands of Oregon, Nevada, and Idaho. Compl. ¶ 2. Per the July 2023 Record of Decision and the March 2023 Environmental Impact Statement, Defendant plans to engage in "Airspace Optimization for Readiness" at the Mountain Home Air Force Base. Compl. ¶ 2. Under this Airspace Optimization decision, F-15 military fighter jets may descend to just 100 feet above the ground, where previously they were prohibited below 3,000 feet above the ground. Compl. ¶ 4. Supersonic flights may fly as low as 10,000 feet above the ground, where previously they were prohibited below 30,000 feet above the ground. Compl. ¶ 4.

Plaintiffs allege that this decision "will have substantial adverse effects on wildlife, wildlands, watersheds, and communities in the area." Compl. ¶ 5. Specifically, they allege that the increased flights and noises will harass and displace wildlife, including greater sage-grouse and bighorn sheep. Compl. ¶ 19, 99, 110. They also allege that discharged chaff and flares will "generate pollution that will impair waterways and wildlands and increase wildfire risk." Compl. ¶ 19, 6.

Plaintiffs allege that Defendant failed to take the requisite "hard look" at adverse impacts and mitigation measures, failed to consider a reasonable range of alternatives, and failed to provide for informed agency decision making, in violation of NEPA and the Administrative Procedure Act. Compl. ¶ 8.

## STANDARDS

I.    **Rule 12(b)(1) Motion to Dismiss**

"Federal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court over the subject matter of the complaint. FED. R. CIV. P. 12(b)(1). "Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Rainero v. Archon Corp.*, 844 F.3d 832, 841 (9th Cir. 2016). The court must dismiss any case over which it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). Once a defendant has moved to dismiss for lack of subject matter jurisdiction, the plaintiff "bears the burden to establish subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In a facial attack, "the challenger asserts that the allegations contained in the complaint are insufficient on their fact to invoke federal jurisdiction." *Id*. In a factual attack, "the challenges dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*; *see also Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (same). In resolving a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff's allegations." *Id*.

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).

## II.     Article III Standing

Article III standing is a threshold jurisdictional question in every case before a federal court. *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975). Before the judicial process may be invoked, a plaintiff must show that the facts alleged present the court with a justiciable "case or controversy" in the constitutional sense and that they are the "proper plaintiff to raise the issues sought to be litigated." *Linda-R.S. v. Richard D*., 410 U.S. 614, 616 (1973); *McMichael v. County of Napa*, 709 F.2d 1268, 1269 (9th Cir. 1983). A party seeking to invoke the court's authority must demonstrate "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Standing exists under Article III when "a plaintiff [has] (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020) (citing *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)). In environmental cases, "[t]he relevant showing for purposes of Article III standing, however, is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). To show injury, a plaintiff must allege they have "an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *Nat. Res. Def. Council v. U.S. E.P.A.*, 542 F.3d 1235, 1245 (9th Cir. 2008) (quoting *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."). However, "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Id.* at 565-66.

"[O]rganizations may have standing "to sue on their own behalf for injuries they have sustained." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)). "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* An organization may bring claims based on associational standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual

PAGE 5 – FINDINGS AND RECOMMENDATION

members in the lawsuit." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

### DISCUSSION

Defendant argues that Plaintiffs have not alleged sufficient facts for either associational or organizational standing. Def.'s Mot. 6–11. As to associational standing, Defendant argues that Plaintiffs have not met their burden to prove standing because the complaint does not specifically identify at least one member who would "otherwise have standing to sue in their own right." *Id*.[1] Here, Defendant's argument fails to account for the stage of litigation.

A plaintiff must "establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Defenders of Wildlife*, 504 U.S. at 561). Under a Rule 12(b) motion to dismiss on the pleadings, the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat. Wildlife Federation*, 497 U.S. 871, 889 (1990).

Plaintiffs allege that "their members use and enjoy the public lands, waters, and natural resources within and surrounding the area encompassed by the Paradise North, Paradise South, Owyhee North, Owyhee South, Jarbidge North, and Jarbidge South [Military Operations Areas] for recreational, scientific, spiritual, educational, aesthetic, and other purposes." Compl. ¶ 18. They further allege that the Owyhee Airspace Optimization will adversely affect their members by "increasing noise levels and shocking sightings of planes racing over and through the

---

[1] Defendants do not dispute the second and third elements required for associational standing. The Court finds that the interests at hand are germane to Plaintiffs' purpose and that the participation of individual members is not required.

PAGE 6 – FINDINGS AND RECOMMENDATION

canyonlands; harassing and displacing wildlife so that members will be less likely to observe these sensitive desert species; generating pollution that will impair waterways and wildlands and increase wildfire risk; and threatening cultural artifacts, sites and resources and other values." Compl. ¶ 19.

At this stage in litigation, the Court finds that this sufficiently alleges that one or more members would have standing to bring the claims. *Cf. Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("We are not convinced that *Summers [v. Earth Island Inst.,* 555 U.S. 488 (2009)], an environmental case brought under NEPA, stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization."); *see also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n. 3 (1992) ("*Lujan [v. Defenders of Wildlife],* since it involved the establishment of injury in fact at the *summary judgment stage,* required specific facts to be adduced by sworn testimony; had the same challenge to a generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful.").

Defendant argues that Plaintiffs was required to specifically identify individual members who would have standing, asserting that the requirement for a specifically identified member is "especially relevant" in environmental cases brought under NEPA. Def.'s Mot. 6 (citing *La Raza*, 800 F.3d at 1041). While the *La Raza* court distinguished the claim under the National Voter Registration Act from the NEPA claim at issue in *Summers*, Defendant provides no binding precedent for their argument that *Summers* created a blanket rule that a Plaintiff must allege the identity of individual members in all NEPA cases. Def.'s Mot. 7. Rather, an organization is not required identify by name the member or members injured "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be

PAGE 7 – FINDINGS AND RECOMMENDATION

adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *La Raza*, 800 F.3d at 1041; *see also California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *21 (E.D. Cal. Feb. 9, 2023), *report and recommendation adopted*, No. 120CV01294ADASAB, 2023 WL 3862717 (E.D. Cal. June 7, 2023) (collecting and discussing cases).

Here, the allegations in the complaint make it relatively clear, not merely speculative, that the one or more of Plaintiffs' members have "an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *See Nat. Res. Def. Council.*, 542 F.3d at 1245. Moreover, Defendant has not asserted that it needs to know the identity of particular member to understand and respond to Plaintiffs' claim of injury. Thus, the lack of specifically identified individual members in Plaintiffs' complaint is not fatal to Plaintiff's claim.

Defendant also argues that Plaintiffs fail to demonstrate organizational standing. Def.'s Mot. 7–11. However, because the Court finds that Plaintiffs have sufficiently alleged associational standing, the Court need not address organizational standing. *Cf. Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1086 (9th Cir. 2003) (noting that when one plaintiff is determined to have standing, the Court need not consider whether additional plaintiffs have standing).

## RECOMMENDATION

Defendant's Motion to Dismiss, ECF 10, should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 7th Day of August, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge